IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BUM HOON LEE, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 18-cv-3593 |
| | ) | |
| v. | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| BK SCHAUMBURG INC. & HYE JOO CHOI, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant BK Schaumburg Inc. and Defendant Hye Joo Choi (collectively, "Defendants") motion for summary judgment. For the reasons set forth below, Defendants' motion for summary judgment [47] is denied. The case is set for a telephonic status hearing on July 14, 2020 at 9:00 a.m. The Courtroom Deputy will enter a separate order containing the call-in information.

**I.     Background**

These facts are taken from the parties' respective Local Rule 56.1 statements and supporting exhibits [49]; [51]; [52]. The Court construes the facts in the light most favorable to the non-moving party, here Plaintiff. "When we cite as undisputed a statement of fact that a party has attempted to dispute, it reflects our determination that the evidence cited in the response does not show that the fact is in genuine dispute." *NAR Business Park, LLC v. Ozark Automotive Distributors, LLC*, --- F. Supp. 3d ---, 2019 WL 7401503, at *1 (N.D. Ill. Dec. 30, 2019) (quotation marks and citation omitted).

Plaintiff Bum Hoon Lee ("Plaintiff") is a former employee of Defendant BK Schaumburg Inc. ("BKS"). [49, ¶¶ 8, 10.] Defendant BKS is apparently part of a larger chain of grocery stores, see [49-2 at 7–8]; Defendant Hye Joo Choi ("Defendant Choi") was the store manager of the BKS's Schaumburg location. [49, ¶ 4.]

Plaintiff was hired to work at BKS by Mr. Cho Yong Kwan ("Mr. Cho"). [*Id.*, ¶ 9.] Mr. Cho determined Plaintiff's position ("produce manager"), pay (starting wage of $12/hour), presumptive hours, and job responsibilities. [*Id.*, ¶ 9–12]; [51-2 at 26–27.] BK executives also directed that employees should not, under normal circumstances, work more than 60 hours per week. [51-2 at 26–27, 43–44.] Defendant Choi did not hire Plaintiff or determine his job description, responsibilities, the number of hours he should work, or wage. [49, ¶ 9–12]; [51-2 at 26–27, 43–44.] Whether she possessed hiring and firing authority in general is disputed.

Plaintiff was hired to work ten hours per day, six days a week, for a total of 60 hours per week. [52, ¶¶ 2–3.] But Plaintiff claims that he actually worked well in excess of 60 hours per week for two reasons. First, sometimes emergencies would pop up at the store that would require him to stay late; for example, if the power failed, he would stay late to help preserve any perishable merchandise. [51-2 at 43:4–14.] Second, Plaintiff attended the "early market" to procure produce three days a week. [52, ¶¶ 2–3.] He would start his day at 2:30 a.m. on early market days, but still had to work a full shift at the store until 6:00 p.m. [*Id.*, ¶ 2.] He claims that Defendant Choi directly ordered him to stay late notwithstanding the fact that he had already worked several hours on the early-morning shift.[1] [*Id.*, ¶ 1.] The parties do not, apparently, contest that Plaintiff received full

---

[1] Defendants contest whether Defendant Choi made such command (or even if she had the authority to do so). [52, ¶ 1.] They also argue that Plaintiff's testimony on this point is contradictory because he seemingly waffled about whether Defendant Choi was the one who ordered him to stay late. [*Id.*] Not so, at least at summary judgment. In response to a question that asked whether "[Defendant Choi] *didn't* tell [him] what hours [he] had to be at work," Plaintiff responded, "Right, right," before launching into a description about how she had required him to work late. [51-2 at 27:3–9 (emphasis added).] When asked to clarify, he

overtime pay for his normal 60-hour-a-week schedule, or any emergency work. [51-1, ¶¶ 18–21]; [51-2 at 43:11–14]; see also, generally, [49-6 (paystubs reflecting that Plaintiff was regularly paid more than twenty hours of overtime per week)]; *contra* [52, ¶ 4]. Plaintiff claims, however, that he was not paid *at all* for the 15–20 hours per week he spent at the early market.[2] [52, ¶¶ 2–3.] Plaintiff explained in his deposition that his store has a biometric timeclock that uses his handprint to punch him in and out. [51-2 at 41, 45–46.] On early market days, then, he claims to have clocked in upon returning from the market, after he had done several hours of work. See [*id.* at 46.]

Plaintiff's operative complaint alleges four counts against both Defendants: violation of the overtime provisions of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.* (Count I); violation of the minimum wage provisions of the Illinois Minimum Wage Law (IMWL), 820 ILCS 105/1 et seq. (Count II); violation of the overtime provisions of the IMWL (Count IV); and violation of the Illinois Wage Payment and Collection Act (IWPCA), 820 ILCS §115/3 *et seq.* (Count V).[3] Before the Court is Defendants' motion for summary judgment.

## II. Legal Standard

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." See Fed. R. Civ. P. 56(a). Rule 56 makes clear that whether a party asserts that a fact is undisputed or genuinely

---

doubled down that Defendant Choi did, in fact, play a role in setting his hours. [*Id.*, 27:11–14.] Plaintiff's initial response can too easily be chalked up to something getting lost in translation, the initial question's wording, or the fact that sometimes people unwittingly acknowledge comprehension of a question using affirmative language. The Court cannot determine based solely on the transcript testimony whether Plaintiff completely reversed himself, so it is for the fact-finder to sort out these ambiguities.

[2] As explained below, speculative guesswork in terms of hours worked cannot support a claim for unpaid overtime. Here, Plaintiff was specific about his timing, but the parties have not briefed whether the time he spent in the morning driving to the early market is compensable.

[3] Plaintiff appears to have omitted a Count III.

disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. *Id*. In determining whether summary judgment is appropriate, the Court must construe all facts in a light most favorable to the non-moving party (here, Plaintiff) and draw all reasonable inferences in that party's favor. *Majors v. Gen. Elec. Co.*, 714 F.3d 527, 532 (7th Cir. 2013) (citation omitted). But Plaintiff "is only entitled to the benefit of inferences supported by admissible evidence, not those 'supported by only speculation or conjecture.'" *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) (citation and quotation marks omitted). Rule 56(a) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against any party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party would bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In other words, the moving party may meet its burden by pointing out to the court that "there is an absence of evidence to support the nonmoving party's case." *Id.* at 324.

It is not the role of the Court to scour the record in search of evidence to defeat a motion for summary judgment; instead, the nonmoving party bears the responsibility of identifying evidence to defeat summary judgment. *Harney, LLC*, 526 F.3d at 1104. To avoid summary judgment, the nonmoving party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (internal quotation marks and citation omitted). For this reason, the Seventh Circuit has called summary judgment the "put up or shut up" moment in a lawsuit—"when a party must show what evidence it has that would convince a trier of fact to accept its version of events." See *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir.

2007). In other words, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

### III.   Analysis

This case arises under the federal FLSA and its state analogue the IMWL. The parties do not dispute that the IMWL is interpreted analogously to the FLSA, at least regarding the provisions at issue here. [48 at 4]; [51 at 6]; see also *Dominguez v. Quigley's Irish Pub, Inc.*, 790 F. Supp. 2d 803, 811 (N.D. Ill. 2011). The FLSA requires a subject employer to pay its employees a minimum hourly wage, and to compensate its employees at one and one-half time the regular rate for a work week longer than forty hours. See 29 U.S.C. §§ 206, 207. Plaintiff also brings suit under the IWPCA, which requires employers to promptly pay their employees.

#### A.   Individual Liability

Plaintiff seeks to hold Defendant Choi individually liable for any wage-and-hour violation. Defendant Choi counters that she cannot be held liable under the FLSA (and by extension IMWL) because she was not Plaintiff's employer. Neither party addresses the employer standard under the IWPCA.

The FLSA defines "employer" to include "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). This definition "'contemplates several simultaneous employers who may be responsible for compliance with the FLSA.'" *Pietrzycki v. Heights Tower Service, Inc.*, 290 F. Supp. 3d 822, 850–51 (N.D. Ill. 2017) (quoting *Villareal v. El Chile, Inc.*, 776 F. Supp. 2d 778, 784 (N.D. Ill. 2011)). Though the Court

must "construe this statute broadly" to effectuate its remedial goals, *Secretary of Labor v. Lauritzen*, 835 F.2d 1529, 1543 (7th Cir. 1987) (Easterbrook, J., concurring) (citing *Rutherford Food Corp. v. McComb*, 331 U.S. 722, (1947); *Tony and Susan Alamo Foundation v. Secretary of Labor*, 471 U.S. 290, 296 (1985)), courts "have stopped short of applying the definition precisely as written." *Schneider v. Cornerstone Pints, Inc.*, 148 F. Supp. 3d 690, 696 (N.D. Ill 2015) (citing *Donovan v. Agnew*, 712 F.2d 1509, 1510 (1st Cir. 1983)); see also *Lauritzen*, 835 F.2d at 1543 (Easterbrook, J., concurring) ("Knowing the end in view does not answer hard question, for it does not tell us *how far* to go in pursuit of that end.") (citations omitted). A statutory "employer" must at least have "had supervisory authority over the complaining employee" and been "responsible in whole or part for the alleged violation." *Riordan v. Kempiners*, 831 F.2d 690, 694 (7th Cir. 1987).

In assessing whether an individual is an "employer," the Court assesses "the 'economic reality' of the working relationship." *Perez v. Super Maid, LLC*, 55 F. Supp. 3d 1065, 1075 (N.D. Ill. 2014). "Relevant factors include whether the alleged employer: '(1) had the power to hire and fire the employees; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; and (4) maintained employment records.'" *Deschepper v. Midwest Wine and Spirits, Inc.*, 84 F. Supp. 3d 767, 778 (N.D. Ill. 2015) (quoting *Nehmelman v. Penn Nat'l Gaming, Inc.*, 790 F. Supp. 2d 787, 795 (N.D. Ill. 2011)); but see *Moldenhauer v. Tazewell-Pekin Consol. Communications Center*, 536 F.3d 640, 644 (7th Cir. 2008) (emphasizing that these factors, though generally relevant, are non-exhaustive). "In sum, the test is to look at all facts surrounding the defendant's supervision of the employee and determine whether the defendant exercised control and authority over the employee in a manner that caused the FLSA violation (at least in part)." *Schneider*, 148 F. Supp. 3d at 698; see also

*Pietrzycki*, 290 F. Supp. 3d at 850 ("An individual may be liable under the FLSA when he is an 'employer' and was responsible in whole or in part for the statutory violation.").

Here, Plaintiff has demonstrated the existence of an issue of material fact[4] concerning whether Defendant Choi was responsible for the FLSA violation. The parties mostly dispute the extent to which Defendant Choi (as opposed to her superiors) possessed ultimate hiring and firing authority over Plaintiff or set his baseline pay and presumptive schedule. But neither of these factors speak to the crux of the relevant analysis here, which is whether Defendant Choi (a) had supervisory authority over Plaintiff, and (b) whether she exercised that authority in such a way to be at least partly responsible for any FLSA violation. Regarding the former factor, Plaintiff has pointed to evidence that she was the store manager, monitored his work, and ordered him to stay late as needed—*i.e.*, she supervised and controlled his work hours and conditions of employment.[5] And, regarding Defendant Choi's responsibility for the purported FLSA violation, Plaintiff has proffered evidence that notwithstanding corporate policy capping hours at ten hours per day, Defendant Choi required him to stay late on early market days. In other words, viewing the evidence in the light most favorable to Plaintiff, Defendant Choi was partially responsible for his unpaid wages because she simultaneously forbade him from billing more than ten hours a day and required that he work for well over ten hours a day on market days.

Defendant Choi argues that Plaintiff's testimony cannot be credited because it is too conclusory, circular, and internally contradictory. It is true that "testimony can and should be

---

[4] Plaintiff both claims that determining whether a defendant is an employer for FLSA purposes is a question of law for the Court to decide and that issues of fact preclude summary judgment. As the Court understands these positions, certain factual issues (such as whether to believe Defendant Choi or Plaintiff) must be resolved before the Court can determine the legal question.

[5] Plaintiff has also testified that Defendant Choi had ultimate control over the timekeeping records, but because there is no allegation that Plaintiff's records were manipulated, this factor is not especially relevant.

rejected without a trial if, in the circumstances, no reasonable person would believe it." *Melton v. Tippecanoe County*, 838 F.3d 814, 819 (7th Cir. 2016) (quotation marks and citations omitted). Although Plaintiff's deposition testimony is not always easy to follow, Defendants have not pointed to any flat-out contradictions that would require this Court to reject it wholesale. And his other conclusory allegations regarding Defendant Choi—that she must be an employer under the FLSA because she was a store manager, and that she hired and fired sundry (unnamed) people—are not the key pieces of evidence establishing employer liability under the FLSA here. A reasonable jury could choose to credit his specific testimony that Defendant Choi made him work late, even if it was not permitted to hear (or disregarded) his other cursory or potentially contradictory allegations.

In Defendant Choi's motion for summary judgment, she does not make any explicit argument regarding the IWPCA, yet still asks for dismissal with prejudice as to that count. In any event, the standard for supervisor liability in the IWPCA context is less stringent than in the FLSA, so her motion with regard to the IWPCA is denied. See *Andrews v. Kowa Printing Corp.*, 838 N.E.2d 894, 899-900 (Ill. 2005) (citing 820 ILCS 115/13) (supervisors who "knowingly permit" an employer to violate the IWPCA can be liable). Finally, because Defendant Choi is not entitled to summary judgment on the FLSA and IWPCA counts, she is not entitled to summary judgment on the IMWL count. See [48 at 4]; [51 at 6]; see also *Foday v. Air Check, Inc.*, 2018 WL 3970142, at *5 (N.D. Ill. Aug. 20, 2018) (not broaching what analysis to apply to IMWL claim where summary judgment is not warranted on FLSA or IWPCA claims).

### B. Overtime

Plaintiff was generally only compensated for ten hours per day for six days of work a week, amounting to 60 hours per week. He claims, however, that he was not compensated for his trips to

8

the early market, which would have added between 15 and 20 hours of overtime to his weekly totals. Defendants concede that Plaintiff's testimony supports these allegations [52, ¶ 2], but argue that Plaintiff's own self-serving testimony is not enough to carry his burden, and, in any event, Plaintiff was compensated for the overtime that he billed, including that in excess of 60 hours per week.

FLSA overtime claims are governed by the burden shifting approach outlined in *Anderson v. Mt. Clemens Potter Co.*, 328 U.S. 680 (1946), superseded on other grounds by the Portal-to-Portal Act of 1947, 29 U.S.C. §§ 251–62. In brief, "an employee who brings suit pursuant to FLSA 'has the burden of proving that he performed work for which he was not properly compensated.'" *Melton v. Tippecanoe County*, 838 F.3d 814, 818 (7th Cir. 2016) (quoting *Anderson*, 328 U.S. 686–87 (1946)). Where "the employee alleges that his employer kept inaccurate records, he 'has carried out his burden if he [1] proves that he has in fact performed work for which he was improperly compensated and if he [2] produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.'" *Id.* (quoting *Anderson*, 328 U.S. at 687). An employee's own vague, inconsistent, or speculative testimony is insufficient to establish that an employer's time records were unreliable or allow a "just and reasonable inference" as to how many overtime hours the employee worked. *Turner v. The Saloon, Ltd.*, 595 F.3d 679, 690–91 (7th Cir. 2010) (employee's own conclusory allegations of improper timekeeping insufficient to defeat summary judgment); *Melton*, 838 F.3d at 819 (summary judgment for employer appropriate where employee's allegations of uncompensated overtime were flatly refuted by paystubs); *Brand v. Comcast Corporation*, 135 F. Supp. 3d 713, 742 (N.D. Ill. 2015) (employee's "guesswork" as to how many hours were "'maybe'" in question do not give rise to a just and reasonable inference as to what the damages are, so employer is entitled to summary judgment).

9

That said, an FLSA plaintiff need not provide documentary evidence or definitive calculations of hours worked—his or her own testimony based on memory is enough to survive summary judgment if it is sufficiently specific. *E.g.*, *Brown v. Family Dollar Stores of IN, LP*, 534 F.3d 593, 596 (7th Cir. 2008) (denying summary judgment because plaintiff's testimonial "evidence alone is sufficient to raise a genuine issue of fact regarding the accuracy of the records"); *Melton*, 838 F.3d at 819 (citing *Anderson*, 328 U.S. at 687; *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 362 (2d Cir. 2011)) ("Relying on the employee's recollection is permissible given the unlikelihood that an employee would keep his own records of his work hours."). For example, an employee may explain that certain "triggering factors" (such as busy seasons or special events that required staying late) triggered uncompensated overtime; because those dates can be pinpointed, any calculations based on them are more than mere speculation. *Brown*, 534 F.3d at 597 (discussing *Allen v. Board of Public Educ for Bibb County*, 495 F.3d 1306 (11th Cir. 2007)). Once a plaintiff creates a just and reasonable inference as to the hours worked, "[t]he burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Melton*, 838 F.3d at 818 (quoting *Anderson*, 328 U.S. at 687–88) (alteration in original).

Defendants argue that their time records (or more appropriately, paystubs) were accurate, because Plaintiff was always compensated for overtime, including that in excess of 60 hours per week. Plaintiff, in turn, testified that he worked uncompensated time three days a week for his trips to the early market.[6] It is undisputed that he, in fact, did go to the early market and that he testified about the specific hours he worked on market days. [52, ¶ 2.] This allegation, akin to a "triggering

---

[6] Defendants argue that Plaintiff's statement of fact that he "typically" worked six days a week is too conclusory to survive summary judgment. [52, ¶ 2.] But Defendants attached Plaintiff's paystubs to their motion, and these stubs show both the number of hours worked and whether Plaintiff took any time off that week. See generally [49-6]. Plaintiff also testified directly on this point. See [51-2 at 51:14–16.]

10

factor," permits a just and reasonable inference as to how much time was uncompensated. Moreover, his story regarding the punch-clock holds together, in that he explains why he did not clock in early on market days. Plaintiff has thus proffered sufficient (and sufficiently specific) evidence that the time records were incorrect and supporting a just and reasonable inference into the total number of uncompensated hours.

Rather than introducing evidence to undercut Plaintiff's claims, Defendant's main retort is that a Plaintiff's own self-serving testimony cannot be used as the sole basis for denying summary judgment. But under both Rule 56 and *Anderson*, an employee's own deposition can indeed be enough to defeat summary judgment. *McKinney v. Office of Sheriff of Whitley County*, 866 F.3d 803, 814, (7th Cir. 2017) ("As we have repeatedly emphasized over the past decade, the term 'self-serving' must not be used to denigrate perfectly admissible evidence through which a party tries to present its side of the story at summary judgment."); *Brown*, 534 F.3d at 596. Here, Plaintiff's testimony is specific as to how many extra hours he worked on which days, meaning that it passes *Anderson*'s just and reasonable inference threshold. And Defendants have not pointed to anything in the record that renders Plaintiff's testimony so incredible that no reasonable jury could believe any of it.

The fact that Defendant compensated Plaintiff for some overtime (even sometimes in excess of 20 hours per week) does not doom Plaintiff's claim. First, that an employer is willing to cough up *some* overtime pay says nothing about claims for additional overtime, as employers must pay time-and-a-half for *every* overtime hour, not just some of them. 29 U.S.C. § 207. Second, Plaintiff explained in his deposition that he was allowed to bill overtime for "emergencies" such as preserving produce if the power failed. He may have been allowed to bill for *those* extra hours, but that is not dispositive as to whether he was allowed to bill for the time he spent at the early

11

market. The emergency and early market overtime hours are distinct, and therefore the just and reasonable inference as to the number of uncompensated overtime hours stands.

Finally, Defendants do not come forward with any further evidence of the hours Plaintiff worked besides his paystubs, as *Anderson*'s burden shifting framework requires. Indeed, despite the fact that Defendants use a biometric punch-clock, [51-2 at 40:13–19], and therefore should be well suited to "come forward with evidence of the precise amount of work performed," they have not included any actual evidence of when Plaintiff clocked in and out on market days. Summary judgment is the put up or shut up moment in a lawsuit—Defendants' failure to "put up" any evidence foreclosing Plaintiff's claims therefore dooms their motion on this count.

C. **Minimum Wage**

The parties treat this claim as coextensive with the overtime claim—that Defendants' failure to compensate Plaintiff at all for the early-market work violated the minimum wage provision of the IMWL because he was paid zero for that time. Because Defendants have not demonstrated that they are entitled to judgment as a matter of law on this count, their motion for summary judgment is denied. Moreover, this approach is not inconsistent with Seventh Circuit precedent regarding the IMWL. See generally *Hirst v. Skywest, Inc.*, 910 F.3d 961 (7th Cir. 2018) (dismissing FLSA claim after applying the workweek average approach, but refusing to dismiss IMWL claim).

D. **Willfulness**

If an employer "willfully" violates the FLSA, then, as is relevant here, the employee-plaintiff can recoup an additional year's worth of back wages. The Plaintiff bears the burden of demonstrating that a violation of the FLSA was willful. *Young Chul Kim v. Capital Dental Technology Laboratory, Inc.*, 279 F. Supp. 3d 765, 770 n.4 (N.D. Ill. 2017) (citations omitted). An

12

employee can demonstrate willfulness by showing "that the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988). "It is the jury's province to decide which limitations period, two or three years, applies in light of the plaintiffs' evidence that the defendants acted willfully." *Bankston v. State of Ill.*, 60 F.3d 1249, 1253 (7th Cir. 1995).

Here, Plaintiff has met his burden of pointing to facts from which a reasonable factfinder could conclude that Defendants' actions were willful. Obviously, Defendant Choi was aware of the overtime provisions in the FLSA and knew or should have known that requiring Plaintiff to stay late without compensation was against the law. The parties have not briefed the extent to which Defendant Choi's actions can reflect upon Defendant BKS, but a jury could infer willfulness from Defendant BKS's conduct as well. Defendant BKS knew about the FLSA's overtime requirements, as it had an explicit overtime policy and paid Plaintiff for the overtime hours he logged. Defendants also concede that Plaintiff's testimony supports the proposition that Defendant BKS's policy was to not "recognize" certain types of overtime, including Plaintiff's assigned duty of attending the early market. See [52, ¶ 4]; see also [51-2 at 26–27 (explaining that Mr. Cho, a higher up, instructed Plaintiff to attend the early market and only bill 60 hours per week]; [*id.* at 72–73 (explaining that Mr. Cho knew about and condoned the underpayment)]. To be clear, as Defendants rightly note, there is nothing wrong with capping an employee's working hours to avoid triggering additional overtime pay—the problem here is that Plaintiff alleges that he was not paid for work he was required to do.

    E.    **Timeliness of Payment**

The IWPCA requires, among other things, that an employer promptly pay, in total, the final compensation owed to an employee after the termination of employment. As far as the Court can

tell from this briefing, the parties treat this claim as coextensive with the overtime claims—that is, Defendants' supposed failure to include the extra overtime in Plaintiff's final paycheck violated the IWPCA. Because the overtime claims survive, then, apparently the IWPCA ones do as well. See [53 at 5].

## IV.    Conclusion

For the reasons set forth above, Defendants' motion for summary judgment is denied. The case is set for a telephonic status hearing on July 14, 2020 at 9:00 a.m. The Courtroom Deputy will enter a separate order containing the call-in information.

Dated: July 1, 2020

_____
Robert M. Dow, Jr.
United States District Judge

14